DUFFY, COLLECTOR OF INTERNAL REVENUE *v.* CENTRAL RAILROAD COMPANY OF NEW JERSEY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 129. Argued March 13, 16, 1925.—Decided April 13, 1925.

1. Expenditures made by a corporate lessee, as required by the lease, to create additions to the leased property and not for upkeep, are not maintenance and operation expenses deductible from its gross income of the tax year in which made, within the meaning of § 12 (a) Subd. "First," of the Revenue Act of 1916, but are betterments. under Subd. "Second" of that section,—capital investment, subject to annual allowances for exhaustion or depreciation. P. 62.
2. Neither are such payments for betterments and additions, though made by the lessee pursuant to the lease, deductible under § 12 (a), Subd. "First" as "rentals or other payments" required to be made as a condition to the continued use or possession of

property etc., since "rental" is there used in the usual sense implying a fixed sum, or property amounting thereto, payable at stated times for the use of property, and " other payments " means payments *ejusdem generis* with rentals, such as taxes, insurance, etc.   P. 63.

289 Fed. 354, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals affirming a recovery in the District Court of money paid under protest as income tax.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, for petitioner. *The Solicitor General* was on the brief.

All of the disbursements made by the taxpayer upon the premises occupied under the long-term leases are capital expenditures, and the only deduction allowable under the Revenue Act of 1916 is an annual deduction for depreciation. Technically speaking, of course, it is true that so far as the leases just mentioned are concerned the taxpayer is a lessee. But this does not mean that the payments made were rental, within the purview of § 12 (a). Indeed the admitted facts surrounding these particular leases conclusively show that the expenditures made upon these demised premises are capital investments, and, under the express terms of the Revenue Act of 1916, are not deductible in the year made, the only deduction allowed being for annual depreciation. *Union Pac. R. R. Co. v. United States,* 99 U. S. 402; *Ill. Cent. R. R. Co. v. Interstate Comm. Comm.* 206 U. S. 441; *United States v. Central Pac. R. R. Co.* 138 U. S. 84; *Kemper Military School v. Crutchley,* 274 Fed. 125; *Grand Rapids, etc., Ry. Co. v. Doyle,* 245 Fed. 792; *Union Hollywood Water Co. v. Carter,* 238 Fed. 329; *Walker v. Gulf & I. Ry. Co.* 269 Fed. 885; *Grant v. Hartford, etc., R. R. Co.* 93 U. S. 225; *Haw. C. & S. Co. v. Tax Assessor,* 14 Haw. Rep. 601; *People v. Wilson,* 121 N. Y. App. Div. 376; *Highland Ry. Co. v. Balderston,*

2 Gr. Br. Tax Cas. 485; *Clayton* v. *Newcastle Corp.* 2. Gr. Br. Tax Cas. 416.

All of the disbursements made for additions and betterments upon the properties leased from the city of New York are capital expenditures, hence are not deductible in the year made under § 12 (a) of the Revenue Act of 1916 from the gross income for that year, but the cost should be spread over the term of the lease and an aliquot part deducted annually. A disbursement was made by the taxpayer in 1916 for the construction of a new pier, located on property covered by a lease from the city to the taxpayer by assignment. The improvement is of a permanent nature. It was not an outlay for the maintenance of property. It is a capital asset from which the taxpayer will derive the benefit of increased pier facilities, resulting in increased revenues. Read in the light of this construction of § 12 (a), which its language undeniably supports, article 140 of Regulations 33 (revised) is a reasonable regulation, affording as it does an equitable relief to a taxpayer who, for the purpose of increasing his business capacity, makes extensive improvements upon leased property, by allowing a deduction for capital expenditures upon a prorated basis, which he otherwise would not be entitled to, unless the payment was required to be made in order to continue in possession of the premises. Moreover, this executive construction of § 12 (a), as shown by the regulations, was known to Congress when it enacted § 234 (a) of the Revenue Act of 1918, which is almost identical with § 12 (a) of the Revenue Act of 1916, and in effect constitutes a reënactment of that section. This reënactment, therefore, is an approval or ratification on the part of Congress of such construction. *United States* v. *Falk,* 204 U. S. 143; *United States* v. *Hermanos y Compania,* 209 U. S. 337; *Komada* v. *United States,* 215 U. S. 392; *National Lead Co.* v. *United States,* 252 U. S. 140.

The items expended for dredging, while small in amount, are controlled by the above principles. They have been held to constitute capital expenditures. *Ounsworth* v. *Vickers*, Ltd. 3 K. B. 267; *Dumbarton Harbour Board* v. *Cox*, Scot. Cas. 162, 56 Scot. L. Reporter 122.

*Mr. Charles E. Miller,* for respondent.

While the word " including " may " merely specify particularly that which belongs to the genus " it may also be used as a word of enlargement and have the sense of " also " and of " in addition," *Montello Salt Co.* v. *Utah,* 221 U. S. 452, 462, 464, and it is frequently so used by Congress. *United States* v. *Pierce,* 147 Fed. 199.

Adopting this latter sense of the word, the Act of 1916 may be read as permitting a corporation to deduct, first, the ordinary and necessary expenses paid in maintenance and operation of its business and property, and second, rentals or other payments required to be made as a condition to the continued use or possession of property. And, since a tax act must be construed against the Government and in favor of the citizen, this act must be so construed.

This being so, it follows that the Railroad Company is entitled to deduct the amounts involved here if they were (1) rentals, or (2) payments required to be made as a condition to the continued use or possession of the property, and (3) the Railroad Company had not taken or was not taking title to the properties involved and had no equity in them.

The expenditures involved here were rentals, *Miller* v. *Gearin,* 258 Fed. 225; Regulations, Commissioner Int. Rev., 1916, Art. 140—payments required to be made as a condition to the continued use or possession of property. Attributing to the word condition its usual and natural

significance, it is evident that the statute permits the deduction of any payments the failure to make which would entitle the landowner to terminate the use or possession of the property, *42 Broadway Co.* v. *Anderson,* 209 Fed. 991 (reversed by this court upon another ground, 239 U. S. 69).

The Railroad Company had not taken, or was not taking, title to the properties and had no equity in them. The words " to which the corporation has not taken or is not taking title, or in which it has no equity, " did not appear either in the Corporation Tax Act of 1909 or in the Income Tax Act of 1913. They were included in the Revenue Act of 1916 as the result of a recommendation of the Secretary of the Treasury, made after the decisions of the lower courts in *42 Broadway Co.* v. *Anderson, supra;* Benders Federal Revenue Law, 1916, p. 64. The purpose of the amendment proposed by the Secretary of the Treasury was to distinguish " between the interest due on liens and mortgages and any payment made in the nature of rentals or charges consituting in the ordinary sense an expense of the business." See report, Secretary of the Treasury, fiscal year ending June 30, 1915, p. 99.

The genesis of the phrase, therefore, suggests that in using the word " equity," Congress had in mind the equity of redemption, which is defined as the remaining interest belonging to one who has pledged or mortgaged his property. " Equity " means equitable ownership, and even if it be possible to give it a broader interpretation, it is the duty of the court to construe it most strongly against the Government. *Gould* v. *Gould,* 245 U. S. 151.

The Railroad Company is entitled to deduct the whole of such expenditures from its gross income for the year 1916. Since the expenditures involved here are of the kind which may be deducted, it is clear that the statute,

by express .words, permits the deduction of all of · such expenditures made within the year.   There is no hint in the statute that the. payments which may be deducted are to be prorated.   The words of the statute are " all . . . paid within the year."   *Mutual Benefit Co.* v. *Herold,* 198 Fed. 199; *United States* v. *Christine Oil & Gas Co.* 269 Fed. 458; *Southern Pac. R. Co.* v. *Muenter,* 260 Fed. 837.   The Government seeks to support the contention that the expenditures involved here should be prorated by the regulation of the Commissioner of Internal Revenue.   It is settled that the power to make administrative rulings does not include the power to legislate, *United States* v. *George,* 228 U. S. 14, and that such a regulation to be valid must be consistent with the statute under which it is made.   *International Railroad Company* v. *Davidson,* 257 U. S. 506, 514.   See also *Maryland Casualty* v. *United States,* 251 U. S. 342, 349 and cases cited.

· MR. JUSTICE SUTHERLAND delivered the opinion of the · Court.

. During the year 1916, respondent, as lessee, was in possession of and operating certain railroads and branches in New Jersey and Pennsylvania.   The leases were for terms of 999 years and bound respondent to maintain and keep the leased property in good order and repair and · fit for efficient use.   Each provided that in. the event of a default in that respect the lease might be terminated by the lessor.   At the same time, respondent had leases of certain piers from the City of New York for various terms with the privilege of renewal, not to exceed · in any case 30 years in all. · One such lease required respondent to acquire and pay for the interests of private owners in an old pier and to construct a new one in its place. . It provided that, if the cost should be less than $2,750,000, respondent was to pay in addition to rent 5½% on the

difference between that amount and the actual cost; but if the cost should be more than $2,750,000 respondent was to be credited on its annual rental with 5½% on such difference for 39 years, in which event the term was to be extended under a formula not necessary to be repeated. Respondent agreed to maintain the premises and structures thereon, or to be erected thereon, in good and efficient repair. The city was authorized to terminate the lease at any time after 10 years, but in such case agreed to pay to respondent such reasonable sum as might be fixed by arbitration. Other leases required respondent to do such dredging as the commissioner of docks considered necessary, and still others, to build extensions to the leased piers. All the leases provided that the city could terminate them if respondent failed to pay rent or failed otherwise to observe the covenants or agreements.

In the year 1916, respondent expended, under the railroad leases, for additions and betterments and, under the pier leases, for the several purposes therein set forth, the aggregate sum of $1,659,924.33, of which $1,525,308.72 was for the acquisition of the private rights in the old pier and the construction of the new one.

In submitting its income tax return for that year, respondent sought to deduct these various expenditures from its gross income under § 12 (a) of the Revenue Act of 1916, c. 463, 39 Stat. 756, 767–769, which provides, in the case of a corporation, that annual net income shall be ascertained by deducting from the gross amount thereof, among other things,—

" First. All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity."

The collector refused to allow the deductions, and respondent, under protest, paid the amount of the increased assessment due to such refusal, and brought this action to recover it. Its contention is that the expenditures were "rentals or other payments" within the meaning of the provision above quoted, and that the whole amount constitutes an allowable deduction for the year 1916. On the other hand, the government contends that the disbursements were capital expenditures and that the only permissible deduction is an annual allowance under § 12 (a) subd. Second, 39 Stat. 768,[1] for "depreciation"; but, if the expenditures are to be regarded as additional rentals or other payments within the meaning of § 12 (a) subd. First, the amount must be prorated, under a regulation of the Treasury Department, over the life of the improvements or the life of the lease, whichever is the shorter. The federal district court gave judgment for respondent, which was affirmed by the circuit court of appeals, 289 Fed. 354; and the case is here on certiorari. 263 U. S. 693.

Clearly the expenditures were not "expenses paid within the year in the maintenance and operation of its [respondent's] business and properties;"[2] but were for

---

[1] Second. All losses actually sustained and charged off within the year and not compensated by insurance or otherwise, including a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business . . . *Provided*, That no deduction shall be allowed for any amount paid out for new buildings, permanent improvements, or betterments made to increase the value of any property or estate, and no deduction shall be made for any amount of expense of restoring property or making good the exhaustion thereof for which an allowance is or has been made: . . .

[2] Perhaps a critical analysis of the detailed statement found in the record might reveal items of minor importance which are of this character, or which might be classed as "rentals or other payments"; but since no point appears to be made in respect of such a differentiation we do not consider it.

additions and betterments of a permanent character, such as would, if made by an owner, come within the proviso in subd. Second, " that no deduction shall be allowed for any amount paid out for new buildings, permanent improvements, or betterments made to increase the value of any property, etc." They were made, not to keep the properties going, but to create additions to them. They constituted, not *upkeep,* but *investment;*— not maintenance or operating expenses, deductible under subd. First, § 12 (a), but capital, subject to annual allowances for exhaustion or depreciation under subd. Second.

Nevertheless, do such expenditures come within the words " rentals or other payments required to be made as a condition to the continued use or possession of property? " We think not. The statement of the court below that it was conceded by both parties that the expenditures were " additional rentals " is challenged by the government and does not seem to have support in the record. The term " rentals," since there is nothing to indicate the contrary, must be taken in its usual and ordinary sense, that is, as implying a fixed sum, or property amounting to a fixed sum, to be paid at stated times for the use of property. *Dodge* v. *Hogan,* 19 R. I. 4, 11; 2 Washburn, Real Property (6th ed.) § 1187; and in that sense it does not include payments, uncertain both as to amount and time, made for the cost of improvements or even for taxes. *Guild* v. *Sampson,* 232 Mass. 509, 513; *Garner* v. *Hannah,* 13 N. Y. Super. Ct. 262, 266–267; *Bien* v. *Bixby,* 41 N. Y. Supp. 433 435; *Simonelli* v. *Di Errico,* 110 N. Y. Supp. 1044, 1045. Expenditures, therefore, like those here involved, made for betterments and additions to leased premises, cannot be deducted under the term " rentals," in the absence of circumstances fairly importing an exceptional meaning; and these we do not find in respect of the statute under

review. Nor do such expenditures come within the phrase " or other payments," which was evidently meant to bring in payments *ejusdem generis* with " rentals," such as taxes, insurance, interest on mortgages, and the like, constituting liabilities of the lessor on account of the leased premises which the lessee has covenanted to pay.

In respect of the 999 year leases, the additions and betterments will all be consumed in their use by the lessee within a fraction of the term, and, as to them, allowances for annual depreciation will suffice to meet the requirements of the statute. In the case of the pier leases, the improvements may and probably will outlast the term, and, as to them, deductions may more properly take the form of proportionate annual allowances for exhaustion.

The judgment below cannot be sustained except for $37,781.54, the amount of a conceded overpayment, with interest thereon as allowed by the trial court.

*Judgment reversed and cause remanded with instructions to modify the judgment in conformity with this opinion.*