## INGLE v. GAGE.
### No. 218–A.

District Court, W. D. New York.
Sept. 25, 1931.

Henry M. Ward, of Washington, D. C. (William W. Armstrong, of Rochester, N. Y., of counsel), for plaintiff.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y., Joseph J. Doran, Asst. U. S. Atty., of Rochester, N. Y., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and E. J. Dowd, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

KNIGHT, District Judge.

In his income tax return for 1918, plaintiff claimed a deductible loss of $14,400 sustained by the demolition and removal of cer-

tain buildings on his properties. The Commissioner of Internal Revenue disallowed the claim. Plaintiff appealed to the Board of Tax Appeals, and, upon submission under an agreed statement of facts, the Board of Tax Appeals sustained the Commissioner and made a deficiency assessment of $11,284.61. The collector of internal revenue demanded payment of such deficiency assessment, with interest. On October 5, 1925, under protest, and with notice of intention to sue for refund, plaintiff paid such deficiency assessment, amounting to $11,739.99. Claim for the refund of the tax so paid was made and disallowed. This action is brought for a refund of the deficiency assessment. Upon stipulation of the parties, the action was tried by the court without a jury.

The findings of fact of the Board of Tax Appeals are made by statute prima facie evidence of the facts therein stated. Section 906 (f) of the Revenue Act of 1924, as amended by § 601 of Revenue Act of 1928, 45 Stat. 872 (26 USCA § 1218), and section 900 (g), Revenue Act of 1924, 43 Stat. 336 (26 USCA § 1218 note). The testimony discloses some additional facts, but no material contradiction of such findings of fact. We find no substantial dispute regarding the facts. The problem is the application of the law to such facts.

For many years the plaintiff had been engaged in the manufacture of war munitions. He and his wife were the owners of substantially all of the stock of a corporation known as the "Bridgeford Machine Tool Works," located at two places in Rochester, N. Y. As an incident of the late World War, the volume of the business of the corporation was largely increased. To provide needed additional facilities, plaintiff, individually, in 1916, purchased a tract of land in that city, located adjoining the New York Central Railroad. There was a substantial building on these premises which the "Bridgeford Machine Tool Company" began to utilize shortly after its acquisition. There is nothing in the record going to show that the plaintiff at the time of this purchase had any intention to purchase any adjoining property. However, in the same year, plaintiff entered into a contract to purchase a so-called "Goossen" tract, lying immediately west and adjoining the lands theretofore mentioned.

In the winter of 1916–1917, plaintiff began the construction of a building extending upon the lands first purchased by him and said "Goossen" tract. On account of the inability to complete this building within the

necessary time, a building in Pittsburgh was purchased, knocked down, and set up on the "Goossen" tract. It is clear that the "Goossen" tract was purchased in anticipation of an increased business of the tool corporation.

Certain premises known as the "Weaver" tract on which there were several buildings were located at the northeast corner of plaintiff's premises. The public street, called "Delamaine Crescent," extended through the premises first purchased by the plaintiff. On the "Weaver" tract a street had been laid out, but not dedicated, giving access to "Delamaine Crescent." In order to round out his land, to close the proposed street, and get title to "Delamaine Crescent," plaintiff purchased the "Weaver" tract. Purchase of the "Goossen" and "Weaver" tracts was consummated early in 1917.

A third tract, known as the "Schrader" tract, near the west end of the "Goossen" tract, was purchased by the plaintiff early in 1918. The evidence shows plaintiff bought this to permit switch connections with the new buildings on his land.

Immediately upon the acquisition of each of these several tracts, they were leased by plaintiff to the "Bridgeford Machine Tool Company." So far as the record shows, they were occupied by it alone, save as regards certain of the buildings thereafter demolished or removed.

Late in 1917 plaintiff entered into negotiations with the federal government looking to the construction by the government of an extensive building on the so-called "Weaver" tract and adjoining lands of plaintiff and to additional government contracts for the tool company. These negotiations, extending over some months, never resulted in any binding agreement.

The structures on the "Goossen" tract, at the time of the purchase, consisted of a one story frame building, two and one-half story frame dwelling, frame plank barn, and a one story shed. On the "Weaver" tract, the buildings consisted of one seven room brick and stucco building, one concrete barn, one cement block garage, and one cement block building. On the "Schrader" tract, the buildings consisted of a two story frame dwelling and a one story frame barn. The buildings on these three several tracts were all either demolished or removed in 1918. The Board of Tax Appeals found as facts that, in the several purchases, $8,800 was allocated to the buildings on the "Goossen" tract; $8,700 to those on the "Weaver" tract; and $1,200 to those on the "Schrader" tract. The Board also found that the value of all of the buildings on such three tracts, with the exception of the brick and stucco dwelling on the "Weaver" property, at the time the buildings were demolished in 1918, was equal to the purchase price of the buildings in 1917. As to the buildings on the "Weaver" tract, the stucco dwelling was sold for $2,000 and removed. The plaintiff received $100 as salvage for the various demolished buildings. On a hearing before the Board of Tax Appeals, the claim was made for an allowance of $1,200 as a loss for the demolition of the buildings on the "Schrader" tract. Upon this trial it appeared that a barn on the "Schrader" property was moved, and plaintiff sustained no loss with respect to it. The value of the barn is claimed to be $700 and that of the dwelling $500.

It is apparent that the distinction between a deductible loss and capital expenditure is often difficult to make. As was said in Seufert Bros. Co. v. Lucas, Internal Revenue Collector (C. C. A.) 44 F.(2d) 528, 529, "No hard and fast rule can be laid down [for demarcation between deductible business expenses and capital expenditures]. Each case must be considered in the light of its own peculiar facts, having due regard to the language of the applicable statute."

We shall endeavor to consider the facts in this case with due regard to the statutes, giving such facts "their rational, practical meaning," Parkersburg Iron & Steel Co. v. Burnet, Commissioner (C. C. A.) 48 F.(2d) 163, 165, having in mind that "in case of doubt they [statutes levying taxes] are construed most strongly against the government, and in favor of the citizen," Gould v. Gould, 245 U. S. 153, 38 S. Ct. 53, 62 L. Ed. 211.

It is claimed that the deduction in question is allowable by virtue of the provision of section 214 (a) (4), Revenue Act of 1918 (40 Stat. 1067), and article 142 of Regulation 45 of the Treasury Department. We may dismiss article 142, Regulation 45, from consideration as inapplicable to the facts in this case. Such article provides two separate things; allowance of a deductible loss where there has been a "voluntary removal or demolition of old buildings, scrapping of old machinery, equipment etc. incident to renewals and replacements," and the disallowance of any deductible loss, where it appears that the taxpayer, at the time of the purchase of real estate, intends to raze old buildings thereon with the view to erecting new. The

buildings in question were not removed or demolished as "incident to renewals and replacements." The real estate in question was not purchased with the view to demolishing or removing the buildings thereon and erecting new buildings on the locations thereof. Section 214 (a) of the Revenue Act of 1918 reads as follows: "That in computing net income there shall be allowed as deductions: * * * (4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business." To permit the deductions claimed here, the loss sustained must be one not "compensated for by insurance or otherwise" and such loss must be "incurred in trade or business." The right to this deduction is further limited by section 215 of said act (40 Stat. 1069), which provides: "That in computing net income no deduction shall in any case be allowed in respect of— * * * (b) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate"; and section 235, Id., which reads: "That in computing net income no deduction shall in any case be allowed in respect of any of the items specified in section 215." (40 Stat. 1080.)

The Board of Tax Appeals denied the deduction claimed on the ground in substance that the taxpayer, when he purchased these lands in 1917–18, and later in 1918, when he wrecked and removed these buildings, "had in mind definite plans and purposes for the use of the premises purchased and that he removed the buildings voluntarily and with the expectation that the lands, after removal of the buildings, could be used in his business in such a manner as would be productive of greater gains and profits."

It is clear the "Goossen" property was purchased to provide "permanent improvements or betterments" to plaintiff's first purchase. Shortly after the original purchase, plaintiff contracted for the "Goossen" property, and immediately commenced construction of a building extending over the two properties. Before completion of this building, another was constructed on the "Goossen" property. Both buildings were so located that street connection at grade required the demolition or removal of the old buildings on the "Goossen" property. The street connection by truck constituted a permanent improvement or betterment of all plaintiff's property, and the improvements and betterments in the way of new buildings and the truck connection were made to increase the value of "all of plaintiff's property." "They were made, not to keep the properties going, but to create additions to them. They constituted, not upkeep, but investment." Duffy v. Central R. R., 268 U. S. 55, 45 S. Ct. 429, 431, 69 L. Ed. 846. Whether it actually resulted in an increase of value is not material. Parkersburg Iron & Steel Co. v. Burnet, Commissioner (C. C. A.) 48 F.(2d) 163, 165, In view of these facts and the provision of section 215, supra, any refund on account of the demolition or the removal of the buildings on the "Goossen" property is disallowed. Liberty Baking Co. v. Heiner (D. C.) 34 F. (2d) 513; Parkersburg Iron & Steel Co. v. Burnet, supra; Milwaukee Woven Wire Works v. Commissioner, 16 B. T. A. 75.

The claim for deduction on account of the demolition and removal of the buildings on the "Weaver" property presents a unique and unusual situation. It appears from the exhibits that the buildings on the so-called "Weaver" property were some considerable distance from the buildings utilized by the "Bridgeford Machine Tool Company" for its manufacturing purposes. There is nothing in the record to show the intention of the plaintiff to demolish or remove the "Weaver" buildings when purchased or until negotiations were entered into between the plaintiff and the federal government with regard to the construction of a building by the federal government on these premises. The uncontradicted evidence shows that the plaintiff demolished or removed these buildings to be ready for such construction. There is nothing to show that by removal or demolition of the old buildings the land could be used in the plaintiff's business so as to be productive of greater gain and profits, unless the federal government constructed its building there. There is nothing to show that the removal of these buildings enhanced the value of the other holdings of the plaintiff, and, under the physical conditions as they appeared, there is nothing upon which to base any probable enhancement of such value. There is nothing to show that the plaintiff would have any use for the land occupied by these buildings, save they were utilized for such federal construction. Plaintiff in good faith removed or demolished these buildings in expectation of the land being used for government purposes. The buildings were rented and largely self-sustaining, and there is no other apparent reason for their destruction or removal. Under such a state of facts, the loss to the plaintiff is a reasonable and proper deductible business expense and not a capital ex-

penditure. The situation as regards the "Weaver" property is easily distinguishable from the case of Parkersburg Iron & Steel Co. v. Burnet, supra. There the alterations plainly constituted an improvement to the property, and say the court in part: "The true test is rather the nature of the expenditure in and of itself. * * * The extent and permanency of the given alteration are indicative of its true character. Here two floors of the building were torn out; its general structure was strengthened by the introduction of steel beams; a sky light was placed in the roof; new concrete foundations were constructed for machinery; a new concrete floor was laid; and the line shafting rearranged—all of which alterations had been retained. These facts indubitably stamp the expenditure for such alterations as being a capital investment."

■ As to the "Schrader" property, we have a still different situation. The barn was removed by plaintiff, and no claim for deduction is made here on that account. The value of the house as shown here was $500. The "Schrader" premises were bought, as we have stated, to permit access to the plaintiff's adjoining premises by switch connections from the New York Central Railroad. Construction of such switches did not necessitate the demolition or removal of the dwelling. This dwelling was in a poor condition of repair. The city of Rochester had ordered that certain additions and improvements be made. Plaintiff testified that the building did not justify this, and the building was demolished.

Defendant in his brief states that the "dwelling on the 'Schrader' property was demolished because it had become unsanitary and unfit for habitation. This property was purchased in February, 1918, and building demolished the same year because it was in such poor condition." And further that "the dwelling on the Schrader property was demolished and removed because the City of Rochester decided it was unsanitary and unfit for habitation or use and ordered plaintiff either to put in modern plumbing or remove it." There is nothing to show that this dwelling was demolished with the expectation that this parcel, after its removal, could be used so as to be productive of greater gains or profits to the plaintiff, or that removal of the building would enhance the value of the entire property. Nor was its removal voluntary. In view of these facts, plaintiff is entitled to a refund based on the disallowance of the deduction of $500 on account of the dwelling.

■ In 1919, all of the four parcels of land were sold by the plaintiff to a so-called Brighton Corporation. The uncontradicted evidence is that this sale was made at cost, less deduction of $14,400 on account of the value of the buildings which were either demolished or removed as heretofore stated. It is true the plaintiff is the owner of substantially all of the stock of the new Brighton Corporation, but there is no evidence to show that the price at which sale was made was not reasonable and fair. Plaintiff testified that he received in payment for the entire property stock at par in the Brighton Corporation for the amount of the value of the property based on its cost, less depreciation and loss of the buildings removed. There is nothing to show that these properties were enhanced in value by reason of the removal or demolition of the various buildings. Seufert Bros. Co. v. Lucas, supra; Union Bed & Spring Co. v. Commissioner of Internal Revenue (C. C. A.) 39 F.(2d) 383; Watson v. Commissioner, 15 B. T. A. 422, and cases cited.

The defendant contends that any deductible losses were sustained in 1919 when plaintiff sold the property. The buildings having been either demolished or removed during 1918, under the facts in this case, the loss held to be deductible is properly charged by the plaintiff as occurring in the last-mentioned year. Plaintiff kept his books on an accrual basis. The actual loss in the value of the buildings was incurred in 1918. Neither before the Commissioner nor the Board of Tax Appeals was any question raised regarding this. Vide Royal Packing Co. v. Commissioner (C. C. A.) 22 F.(2d) 536; De Loss v. Commissioner (C. C. A.) 28 F.(2d) 803; Electric Reduction Co. v. Lewellyn (C. C. A.) 11 F.(2d) 493.

Judgment may be entered in favor of the plaintiff and against the defendant for the amount of the income taxes assessed against and paid by him on account of the disallowance of plaintiff's loss by the removal or demolition of all buildings on the "Weaver" and "Schrader" parcels of land hereinbefore described.