ILLINOIS CENTRAL RAILROAD COMPANY AND YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62023, 62991. Promulgated March 4, 1936.

*R. C. Beckett, Esq.*, and *Edward C. Craig, Esq.*, for the petitioners.
*E. C. Algire, Esq.*, and *Lloyd B. Harrison, Esq.*, for the respondent.

### OPINION.

TRAMMELL:[1] The opinion of the Board in these proceedings, 30 B. T. A. 1107, was promulgated on June 29, 1934. On September 24, 1934, petitioner filed a motion for further hearing of the proceedings, for the purpose of (a) filing an amended petition in Docket No. 62023, in order to claim a deduction for each of the years 1926 to 1929, inclusive, of the liability of the Yazoo & Mississippi Valley Railroad Co. arising out of retirements of leased equipment in those years; (b) introduction of evidence to prove the amount of the said liability for each of said years; (c) modification of the opinion so as to include appropriate findings of fact based on the amendment and proof; (d) correction of the findings in the said opinion with respect to the amount of the deduction allowed by respondent for 1928 for replacement of leased properties; and (e) correction of the findings and modification of the opinion with respect to the cost of tie replacements on leased tracks and the quantum of the allowable deduction therefor for 1928. On March 15, 1935, respondent filed a motion for further hearing of the proceedings, for the purpose of (1) the introduction of additional evidence with respect to the issues of (a) the deduction in 1928 of cost of tie replacements on leased tracks, and (b) the deduction,

---

[1] This decision was prepared during Mr. Trammell's term of office.

1

in each of the taxable years, of the liability of the Yazoo & Mississippi Valley Railroad Co. arising out of retirements of leased equipment; and (2) reconsideration of the opinion with respect to those issues. These motions were duly granted on September 25, 1934, and March 20, 1935, respectively, and a further hearing, limited to the matters set forth in the motions, was accorded the parties on May 15, 1935. Upon reconsideration of the entire record, we are now convinced that our earlier opinion is wrong in several respects and should be set aside. Accordingly, the following opinion is substituted for the earlier one promulgated on June 29, 1934.

Respondent determined deficiencies in petitioners' income taxes, of $27,088.88 for 1926, $84,611.39 for 1927, $46,663.09 for 1928, and $29,463.82 for 1929. In the original petitions, the petitioners alleged that the respondent's determination is erroneous as to each taxable year, in that he did not deduct from the income of the Yazoo & Mississippi Valley Railroad Co., the cost of making replacements of leased railroad properties which that company retired from service. In the amended petitions, which were filed to conform the pleadings with the Board's earlier opinion, the petitioners, while maintaining the allegations of error of the original petitions, further allege that the determination is erroneous, in that respondent did not deduct from the income of each year, the amount of the Yazoo & Mississippi Valley Railroad Co's. liability to replace leased properties which it retired within the year. The respondent claims increased deficiencies for all of the taxable years, on the ground that he erred in allowing certain deductions from the income of the Yazoo & Mississippi Valley Railroad Co., which deductions will be pointed out as they are considered. The parties submitted written stipulations embodying substantially all of the material facts, which are incorporated herein by reference. The proceedings were consolidated for hearing and decision.

Petitioner Illinois Central Railroad Co. is an Illinois corporation, with its principal office at Chicago. It filed consolidated returns for the taxable years, which included the net income of, among others, petitioner Yazoo & Mississippi Valley Railroad Co. It is liable for any and all deficiencies, and is entitled to recover any overpayment for 1929 based upon the consolidated returns.

On March 31, 1925, the Yazoo & Mississippi Valley Railroad Co., herein called the lessee, entered into separate agreements with the Alabama & Vicksburg Railway Co., and the Vicksburg, Shreveport & Pacific Railway Co., herein called the lessors, by the terms of which it leased the properties of the two last mentioned companies until July 1, 2282, with options to renew the leases for an additional period of 999 years. The lessee agreed that it would keep up, maintain,

repair, replace, and renew the leased properties during the terms of the leases, so that such properties would at all times be in substantially as good repair, working order, and condition as they were at the effective date of the lease agreements; and that, whenever during the terms of the leases any part of the leased properties, including rolling stock and equipment, should be damaged, destroyed, or otherwise become unfit for its appropriate use and purpose, it would cause the same to be repaired, renewed, rebuilt, or replaced by property of equal value. These covenants were to be performed at the lessee's sole cost and expense. The agreements also provided that the lessee should have the right to make such additions and extensions to, and betterments and improvements of, the leased properties as it deemed necessary, for which it was to be reimbursed by the lessors. The leases became effective on June 2, 1926, and the lessee took over the leased properties on that day.

(a) In computing the lessee's net income, the respondent allowed deductions of $229,119.70 for 1926, $293,019.01 for 1927, $285,528.91 for 1928, and $232,102.40 for 1929, representing, in each instance, the lessors' cost, less salvage recovered, of properties retired and replaced by the lessee during the taxable year. Respondent urges that he erred in allowing these deductions and makes claim to any increased deficiencies that may result from the correction of his error. Petitioners concede that the lessee is not entitled to these deductions, because it was not the owner of, and had no capital investment in, the retired and replaced properties. We agree with this concession; it is in line with the authorities on the question. *Duffy* v. *Central Railroad Co.*, 268 U. S. 55; *Weiss* v. *Wiener*, 279 U. S. 333; *Brevoort Hotel Co.* v. *Reinecke*, 36 Fed. (2d) 51; *Belt Railway Co. of Chicago*, 9 B. T. A. 304; affd., 36 Fed. (2d) 541; certiorari denied, 281 U. S. 742; and *Michigan Central Railroad Co.*, 28 B. T. A. 437. The respondent's action in allowing the deductions is reversed, and his claim to the resulting increased deficiencies is allowed.

(b) The lessee expended $394,875.75 in 1926, $427,166.24 in 1927, $399,714.22 in 1928, and $320,032.73 in 1929, in replacing rail and other track materials on the leased roadways. Most, if not all, of the rail and other materials used in making the replacements were heavier than the rail and materials replaced, and, to that extent, the replacements were betterments or improvements. Of the amounts so expended by the lessee, there were charged to and borne by the lessors $61,974.23 in 1926, $68,453.73 in 1927, $58,942.51 in 1928, and $50,672.52 in 1929, as the cost of the betterments or improvements. No part of the lessee's material expenditures in any of the taxable years has been allowed as a deduction by the respondent.

The labor costs incurred and borne by the lessee in making the above replacements were $32,439.33 for 1926, $41,492.71 for 1927, $27,615.87 for 1928, and $22,984.56 for 1929. One half of these labor costs were incurred in taking up the replaced rail and materials and one half in laying the replacements. These labor costs were allowed as deductions by the respondent, but he now asserts that he erred in this respect and makes claim to any increased deficiencies that may result from the correction of his error.

There can be no doubt that these expenditures for both material and labor under the facts of this case, to the extent they were actually borne by the lessee, constitute ordinary and necessary expenses of its business and are deductible in computing taxable net income, unless the respondent shows that some portion thereof related to betterments and improvements. The burden of proof on this issue is on the respondent and he has failed to show what portion, if any, should be allocated to capital. The maintenance engineer of the petitioners testified that the replaced rail was from 12 to 18 years old and in poor condition; that the replacements were made in pursuance of the maintenance program adopted and followed by the Illinois Central, of which the lessee is a subsidiary line; and that such replacements were necessary to the proper upkeep and maintenance of the leased properties. There is nothing in the record to the contrary. The expenditures are ordinary in the business in which the lessee is engaged and they are necessary, because the lessee was required to make them in the performance of its covenants to keep up and maintain the properties. To the extent indicated, that is, to the extent that these expenditures for labor and material were borne by the lessee, the expenditures did not contain anything of a capital nature; the cost of all additions, betterments, and improvements was charged to and borne by the lessors. Obviously, the deductions must be limited to the lessee's burden of the expenditures; for the statute will not permit the deduction of amounts for which it was reimbursed, or to be reimbursed, by the lessors. *New York, Chicago & St. Louis Railroad Co.*, 26 B. T. A. 1229, 1289, and cases therein cited. The respondent's claim that he erred in allowing the labor costs as deductions is disallowed. The lessee is entitled to deductions of $332,901.52 for 1926, $358,712.51 for 1927, $340,771.71 for 1928, and $269,360.21 for 1929, these being the expenditures actually borne by the lessee and not shown to have been of a capital nature, that is for improvements and betterments.

(c) The lessee expended $65,500.82 in 1926, $50,321.05 in 1927, $181,115.43 in 1928, and $268,126.92 in 1929, in replacing 57, more or less, bridges and trestles on the leased roadways. Most, if not all,

of the replacements were improvements over the removed structures. Of the amounts so expended by the lessee, there were charged to and borne by the lessors $27,904.76 in 1926, $40,916.79 in 1927, $128,773.23 in 1928, and $190,689.90 in 1929 as the costs of the betterments or improvements.

Also, the lessee expended $23,665.41 in 1926, $355,855.39 in 1927, $127,393.98 in 1928, and $152,971.38 in 1929, in replacing other parts of roadways and roadway structures, extending and rearranging existing trackage, constructing new facilities, installing tie plates, and otherwise making changes on the leased properties. Most, if not all, of these changes were betterments or improvements. Of the amounts so expended by the lessee, there were charged to and borne by the lessors $20,974.38 in 1926, $282,126.57 in 1927, $106,155.71 in 1928, and $121,238.20 in 1929, as the costs of the betterments or improvements.

The respondent did not deduct any part of these expenditures in computing the lessee's taxable net income.

While expenditures for ordinary upkeep and maintenance, such as those for rail and other track material replacements referred to under (b), are proper deductions from income, the lessee may not deduct expenditures made primarily for adding to and improving the leased properties. *Duffy* v. *Central Railroad Co., supra.* The latter must be charged to capital and written off over the terms of the leases or the life of the property, whichever is shorter, by annual pro rata charges against income. As to all but three items covered by the expenditures here considered, the evidence is insufficient to enable us to determine whether or not they may be deducted from income, even to the extent that they were borne by the lessee. Petitioners' maintenance engineer, without stating his reasons therefor and apparently basing his opinion on the meager facts in the stipulation, expressed the opinion that all of the expenditures were necessary to the proper maintenance of the leased properties. If by that he meant that they were necessary in order to keep the properties in good repair and good running condition, and no more than that, the inaccuracy of his opinion is clearly disclosed by the stipulated facts. The depression and rearrangement of existing tracks, the construction of concrete subways where none existed before, the extension of yard leads, and the application of more than a hundred thousand additional tie plates to the roadways are clearly betterments or improvements and can not be ascribed categorically to that kind of upkeep and maintenance that may be deducted from income. Further, it is to be noted that some of the bridges and trestles replaced in the taxable years were constructed

or erected as late as 1917 and 1918, and, as to them, while we have been given no evidence as to the usual normal life of this type of structures, there obviously must be some doubt that their replacement was due to normal upkeep and maintenance and not to betterment or improvement of the leased properties.

The three excepted items are $283.80 expended in 1926 for replacement of a worn-out cypress shingle roof on a section house; $36,174.22 expended in 1927 for replacing 17 miles of main track that had been washed out by flood conditions; and $6,470.90 for replacing 36,292 tie plates in 1928. These three items are proper deductions in computing the lessee's taxable net income. Deduction of all other expenditures here considered must be denied for lack of proof that they are ordinary and necessary expenses.

(d) The respondent contends that the deductions allowed under (b) and (c) should be reduced by the amounts of salvage recovered in the taxable years from retired and replaced leased properties. We disagree with this. The lessors, being the owners of the retired and replaced properties, were likewise the owners of the materials salvaged therefrom and the proceeds of any sales of such materials, unless, by virtue of some provision of the lease agreements, the materials and proceeds were to belong to the lessee. We find no such provision in the lease agreements; and that it was the intent of the parties that materials salvaged from retired properties and the proceeds from the sale thereof should belong to the lessors, and not the lessee, is deducible from the fact that the lessee consistently credited its lessors, on its books of account, with the value of such salvaged materials and any proceeds from the sale thereof.

(e) During the taxable years and 1930, the lessee retired 1,464 units of leased equipment, such as locomotives and freight train cars, having a depreciated book value as of June 2, 1926, as agreed upon by the lessee and lessors, of $1,157,752.92. These retirements took place as follows: 1926, 81 units valued at $72,785.86; 1927, 757 units valued at $497,295.33; 1928, 389 units valued at $356,371.48; 1929, 164 units valued at $161,026.82; and 1930, 73 units valued at $70,273.43. Under the lease agreements, the petitioner was required to replace these units with units of like values. As each equipment unit was retired, the lessee recorded its liability for replacement thereof on its books, in an amount equal to its depreciated book value at June 2, 1926, by a credit to the account of the lessor owning the unit. These retired units were replaced by the lessee with equipment furnished by the Illinois Central, as guarantor under the lease agreements, as follows: 577 units in 1929, and 29 units in 1930, a total of 606 units; but title thereto was not conveyed to the lessors at the times of replacement. The value of these replacement units on the petitioner's

books, which was cost less depreciation previously allowed, was $1,020,121.99, but for the purposes of the replacements, the lessee and lessors agreed upon values of $1,103,579.22 for the 1929 replacements, and $60,408.60 for the 1930 replacements, a total of $1,163,987.22. In August 1929, it was agreed that the lessee should convey to the lessors title to all such equipment replacements and to such other equipment as was necessary to replace all units of leased equipment that had been and would be retired up to December 31 of that year, in order that all such equipment might be brought immediately within the liens of the lessors' mortgages. By reason of the delay in agreeing upon the values and classes of replacement units that were to be conveyed to the lessors, the conveyances of titles were not formally made to the lessors until 1932. The accounting for the transfer of the replacement units was made on the books of the lessee and lessors in 1932.

The expenditures represented by these replacements were not "ordinary and necessary expenses paid or incurred during the taxable year[s] in carrying on any trade or business", within the meaning of section 214 (a) (1) of the 1926 Act and section 23 (a) of the 1928 Act, but were for permanent additions and betterments to the leased properties, such as would, if made by the owners of these properties, come within the provisions of section 215 (a) (2) of the 1926 Act and section 24 (a) (2) of the 1928 Act, "that no deduction shall in any case be allowed in respect of any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property." "They constituted, not upkeep, but investment; not maintenance or operating expenses, but capital, subject to annual allowances for exhaustion or depreciation." *Duffy* v. *Central Railroad Co.*, *supra*. The petitioners' contention that they are deductible, in computing the lessee's taxable net income, is, therefore, denied.

(f) The last issue for consideration is respondent's alternative claim that he erred in deducting $74,774.05 from the lessee's income for 1929, for depreciation of the equipment replacement units conveyed to the lessors in 1932, and asking for an increased deficiency for 1929 on this account. He urges it only if the Board holds that the lessee is entitled to deduct from the income for 1929, the entire amount of its liability to the close of that year for replacement of leased equipment which it retired. We have already held that the lessee is not entitled to deduct the cost of its replacements of retired leased equipment. Consequently, respondent's alternative claim needs no further consideration.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*