W. L. WESTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. L. WESTER, EXECUTOR OF ESTATE OF MARJORIE E. WESTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 67036, 67037, 67145, 67146. Promulgated January 7, 1938.

*John R. Wheeler, Esq.*, and *George V. Whittle, C. P. A.*, for the petitioners.

*H. D. Thomas, Esq.*, for the respondent.

## OPINION.

DISNEY: At the outset we are met with the contention of the respondent that the record is devoid of proof of any expenditure for any purpose. We can not so agree. The deficiencies involved herein were determined upon the basis of the Internal Revenue agent's reports, which reports set forth that petitioner Wester, as claimed by the petitioners in their returns, expended $99,726.83 in 1929 and $41,711.50 in 1930 in developing the real estate, and are made a part

of the deficiency notices by reference. The figures used by the respondent in the determination of the deficiencies are not only consistent with the returns of the petitioners, but in his answer to the petition filed in Docket No. 67036 he denies only such facts as are inconsistent with and contrary to his determination as stated in his notice of deficiency. Moreover, upon trial it was agreed by counsel that there was only one issue, the language being: "There is no issue with respect to the amount of income if it was in fact earned by Mr. Wester." This can only fairly mean that there was no controversy as to the amount of the expenditures.

The determination of the respondent is presumed to rest upon a correct determination of the facts. *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289. There is no suggestion in the record before us that the figures used in arriving at the deficiencies in question are incorrect in any respect. Under the circumstances, it would be error for us to accept the correctness of the respondent's determination without recognizing the basis for the result he reached. *Wilson Coal Land Co.* v. *Commissioner*, 87 Fed. (2d) 185.

The petitioners contend that the expenditures are deductible as ordinary and necessary business expenses, citing *Salathiel R. Fletcher*, 24 B. T. A. 75. In contending that we should sustain his determination, the respondent argues that the petitioners had an interest in the realty being sold and that, irrespective of the question of title, the expenditures were not ordinary and necessary.

In support of his view that Wester had sufficient title in the realty to require the expenditures in question to be capitalized as part of cost of the land on which the improvements were made, and to treat sales of parcels thereof as giving use to taxable gain to petitioner, the respondent cites *Wester* v. *South Seattle Land Co.*, 24 Pac. (2d) 632, a case involving the identical contract before us. Our understanding of the court's ruling does not agree with the respondent's interpretation.

After the termination of the contract in August 1931, Wester filed a complaint in the Superior Court of King County for an order restraining the South Seattle Land Co. from canceling any of the sale contracts or options, from applying any of the moneys received thereunder other than in payment of delinquent taxes, from selling any lands upon which the permanent improvements were located, from interfering with his possession and operation of the poultry plant, and for an accounting for his equity in the contracts of sale, options, and permanent improvements made on the land. The pleading contained no allegation of interest in the realty other than the improvements made at the plaintiff's expense. Wester appealed from the court's decision that the complaint did not state a cause of action.

The ultimate ruling of the appellate court was that the complaint, as amended, stated a cause of action for an accounting. In reaching its conclusion the court did not expressly or inferentially hold that the South Seattle Land Co. and Wester were joint owners of the property so as to require a severance of title in connection with the proceeding. It remarked that "The enterprise had in it something of the nature of a joint adventure or of a special and limited partnership", and that the interest of Wester in the "subject-matter" of the contract was such as to give him a right to an accounting. The premise for the decision was the well settled rule that equity will assume jurisdiction in cases where there is a complexity of mutual accounts and justice can not be done without an accounting. The plaintiff was entitled to receive a proportionate part of the money paid by purchasers of subdivisions prior to the termination of the agency contract, and, because of the complicated method adopted for apportioning receipts from sales, he would have been entitled to an accounting in equity irrespective of the fact that part of his compensation was contingently payable in real estate.

The lower court did not interpret the appellate court's decision as holding that the petitioner had a property interest in the realty. In its decree entered in 1934 after trial it decreed the South Seattle Land Co. to be the sole owner of the contracts (for sales made by Wester), lands, and improvements existing on August 15, 1931, free from any claim which the plaintiffs may have had therein, without directing the plaintiffs to convey any interest in the property to the South Seattle Land Co.

In *Salathiel R. Fletcher, supra,* the petitioner and others, as agents, agreed to pay part of the cost of preparing a tract of land for sale as lots and thereafter sell the land for the account of the owner. When the owner received the sum of $400,000 from sales as the purchase price of the land, they were to receive, as compensation for their services, the unsold lots in the tract and all contracts, notes and mortgages, and other proceeds of the venture. In 1923 Fletcher paid the sum of $7,921.62 as his share of expenditures made by the agents "in connection with platting, surveying and preparing the real estate involved for sale as lots." In holding that Fletcher was not required to capitalize the amount but was entitled to deduct it as an ordinary and necessary business expense, we said:

* * * The excess over the $400,000 was in fact compensation for services rendered as truly as if the owners had agreed to pay petitioner a straight salary or set commission. The expenditures made by petitioner in producing such income were in substance no different in principle from expenditures made by a lawyer in prosecuting his client's case on a contingent basis, which in the case of the lawyer are admittedly deductible. A taxpayer on the cash basis deducts his expenses when paid and reports his income when received. If, after petitioner receives his share of the property remaining unsold after the owners have

been paid their $400,000, he makes further expenditures of the same nature as the ones in question, such further expenditures must be capitalized and considered a part of the cost of the property received. But this is because he is then acting on his own account and not as the agent for others. The same rule applies in the case of the lessee of property. If the lessee makes improvements having a life in excess of the term of the lease, the lessee is entitled to deduct as additional rental the cost of such improvements spread over the remaining term of the lease, *Duffy* v. *Central R. Co. of New Jersey*, 268 U. S. 55; whereas, if such improvements were made by the owner of the property, a deduction to the owner would be based on the life of the improvements. * * *

A like situation prevailed here respecting all of the items in controversy excepting those relating to the Monticello poultry houses and warehouse. Petitioner Wester, as agent for the South Seattle Land Co. and in consideration of the payment to him of certain commissions for effecting sales of parcels of land for the owner, agreed to put the tract in condition for sale at his own expense. The nature of the undertaking required the facilities for which the outlay was made. The expenditures merely enhanced the value of another's property and did not result in the creation of a capital asset of Wester. The deductibility of an amount as an ordinary and necessary expense is ordinarily determined by the nature of the expense and not by the amount involved. In *Union Collieries Co.*, 3 B. T. A. 540, we said, in discussing the question of capital expenditures as against business expenses, "this determination should not be made to depend alone upon whether they are major or minor items." Generally speaking, the fact that expenses are unusual in amount can not deprive them of their inherent character as expense items. *First National Bank of St. Louis*, 3 B. T. A. 807. The amount of the expense in the *Fletcher* case was probably as large as the amount in controversy here, since Fletcher had only a one-sixth interest in the agency contract.

The petitioner received the moneys reported as income by him, from the owner of the land, as compensation for his services in handling the property. His contract was specifically one of agency. He never acquired ownership of any part of the land. If petitioner Wester had become entitled to a conveyance of unsold tracts upon the receipt by the owner of its share of the selling price, the fair market value of the land received would have been taxable to him as compensation for services rendered. *W. L. Walls*, 21 B. T. A. 1417; affd., 60 Fed. (2d) 347. Such amount would then constitute petitioner Wester's cost basis for the computation of gain or loss upon a subsequent sale. The amounts received by petitioner Wester in the taxable years were not paid to him on account of a property interest he had in the realty, but as partial compensation for services rendered in order to enable him to meet overhead operating expenses.

Following the reasoning of the *Fletcher* case, we hold that all of the expenditures in question, except the expenditures of $55,182.97

and $22,852.76 made in 1929 and 1930, respectively, in connection with the construction of the Monticello poultry houses, are deductible as ordinary and necessary business expenses.

From the meager facts before us we are not warranted in concluding that the cost of the poultry houses should receive like treatment. Aside from the proof made by the petitioners that the plants were located on unsold land in the tract owned by the South Seattle Land Co., we have no competent evidence as to the circumstances surrounding the investment to overcome the presumption that the respondent's determination rests upon a correct finding of the facts. Nothing appeared in the contract of May 23, 1921, as amended, obligating petitioner to make the investment and such poultry houses are not of the character of improvements, such as grading, etc., which are ordinarily associated with the sale of lots such as here involved. For aught we know there may have been an agreement between the owner of the land and petitioner Wester giving the latter title to the improvements at least during the effective period of the agency contract.

In computing the deficiencies the respondent allowed deductions for exhaustion at the rate of 7½ percent per annum on cost. Such action has not been shown to be error and will not be disturbed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN and MELLOTT dissent.