MIDTOWN TOWER, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87479. Promulgated June 21, 1939.

*Jacques Braunstein, Esq., Jacob Rabkin, Esq.,* and *Mark H. Johnson, Esq.,* for the petitioner.

*Walt Mandry, Esq.,* for the respondent.

### OPINION.

LEECH: This is a proceeding to redetermine a deficiency in income tax of $1,472.98 and a deficiency in excess profits tax of $529.38 for the fiscal year ended February 28, 1934. The issues are, first, whether petitioner is entitled to include in the cost of a leasehold, for purposes of exhaustion, a consolidated mortgage on the leasehold and the value of certain shares of stock issued in connection with the assignment of the lease to petitioner, and, second, whether the cost of the lease should be exhausted and recovered over the remaining term of the lease or over the life of the consolidated mortgage.

The facts were stipulated and are so found. Petitioner, a New York corporation, became the lessee of premises located at 50 Seventh Avenue, New York City, in the following manner. On November 11, 1930, the Metropolitan Temple, a New York religious corporation, leased the premises to the Ambrose Realty Co. for a term of 21 years, with provisions for three optional renewals of 21 years each, in consideration of certain specified rentals and the performance of certain covenants and conditions contained in the lease.

The lease provided that the lessee would erect an apartment house, maintain it in good repair until the end of the term, and surrender it in good order at that time. The "Sixth" paragraph of the lease provided, *inter alia*:

As a further consideration of this lease, the lessee shall, as additional rent, pay and discharge within thirty (30) days after the same shall become due and payable, all taxes and assessments which may during the term hereby demised or any renewal thereof, be imposed and charged upon the demised premises and all buildings and improvements thereon; and shall pay the interest and installments of principal upon any and all mortgages now or hereafter a lien upon the demised premises not exceeding in the aggregate the principal sum of $900,000 or such lesser amount as shall remain due and unpaid from time to time on the mortgage and mortgages and/or consolidated mortgage referred to in paragraph fifteenth hereof * * *.

In paragraph "Fifteenth", in order to assist the lessee in financing the building operation, the lessor authorized the lessee to contract a loan, secured by a mortgage on the leased premises and the buildings and improvements thereon, not in excess of $767,500, in the execution of which mortgage the lessor was to join. Though the lessor was to assume no personal liability on such loan, it agreed to execute the mortgage jointly with the lessee. The lessee there agreed to consolidate with the Building & Loan mortgage, an existing mortgage already a lien on the premises, in the sum of $132,500, and cause the existing mortgagee to release the lessor from all liability thereon.

This paragraph also provided as follows:

The principal sum secured by the said consolidated mortgage on the demised premises shall be amortized by the Lessee at the rate of not less than Eighteen Thousand Dollars ($18,000) per annum, payable in two semi-annual installments, said amortization to commence not later than twelve (12) months from the date fixed by the terms of this lease for the completion of said building and to continue at that rate until either the said mortgage shall have been fully paid or until the date originally fixed for the termination of the term of this lease, or if such lease is renewed until the date on which said renewal term expires, or if said renewal lease is renewed for the second time then until the time when the full principal sum of said consolidated mortgage has been paid, and all renewal, replacement and extension agreements relating to the original and/or consolidated mortgage hereunder authorized shall so provide.

Paragraph "Forty-first" of the lease provided that all payments required to be made by the lessee under the leasing either to the lessor or otherwise should be regarded as additional rent.

On November 12, 1930, the Ambrose Realty Corporation assigned the lease to the Fifty Seventh Avenue Corporation, the assignee covenanting with both the assignor and Metropolitan Temple to perform all the obligations of the lessee contained in the lease. Notwithstanding the assignment, it was provided that the Ambrose Realty Corporation would continue to remain liable under the lease. Thereafter, Fifty Seventh Avenue, joined by the Metropolitan Temple, executed the consolidated mortgage of $900,000, due March 13, 1937, entered upon the property, and erected the required building, in accordance with the terms of the lease.

Because of arrears in taxes, interest, and mortgage amortization, the lease was modified on February 27, 1933. The changes made, so far as here material, were as follows: The requirement to amortize the principal of the mortgage prior to January 1, 1937, was omitted, except in so far as the holder of the mortgage might require it. On January 1, 1937, amortization payments by the lessee were to be resumed at a rate not less than $9,000 semiannually and continued until the termination of the original lease term or until the expiration of the first renewal term, and if there should be a second renewal, until the full principal sum of the mortgage should have been paid. The provision that all payments required to be made by the lessee under the lease to persons other than the lessor should be regarded as rent, was reiterated. Finally, the modification agreement provided that on condition the lessee should remain liable on all the terms, covenants, and conditions of the lease as modified, the lessor consented to the assignment of the lease, as modified, to petitioner.

On the same day, the Fifty Seventh Avenue Corporation and Metropolitan Temple entered into an agreement with the New York Title & Mortgage Co., the holder of the mortgage bond, which deferred payment of all installments of principal due or to become due until March 13, 1937. The modified lease was thereupon assigned by the Fifty Seventh Avenue Corporation to petitioner, subject to the mortgage on the fee on which there was then unpaid the sum of $900,000.

The final transaction of February 27, 1933, was the execution of an agreement between the Metropolitan Temple and petitioner which recited that in consideration of the consent by the Metropolitan Temple to the assignment of the lease to petitioner, petitioner assumed and agreed to be bound by all of the terms, covenants, provisions, and conditions to be performed on the part of the lessee, as modified by the agreement between the Fifty Seventh Avenue Corpo-

ration and the Metropolitan Temple. In addition, this agreement stated that the Metropolitan Temple consented to the assignment, provided the Fifty Seventh Avenue Corporation continued to be bound under the lease.

In connection with the assignment of the lease, petitioner expended $43,167.61, representing payments of arrears of interest, taxes, etc., due at the time of the execution of the assignment.

On February 27, 1933, the Fifty Seventh Avenue Corporation wrote the following letter to petitioner:

Referring to the sale of the lease and leasehold estate of premises 48-60 Seventh Avenue, New York City, by the undersigned to you, consummated this day as of March 1, 1933, kindly draw or endorse the checks for the consideration to the extent of Forty Thousand Thirty-Two and 15/100 Dollars ($40,032.15) to the order of New York Title and Mortgage Company, check for One Thousand Dollars ($1,000) in accordance with approval of payment thereon, and kindly issue the two and one-half (2½) shares of stock of your corporation in the name of Edward Levy.

Simultaneously with these instructions, petitioner's chief stockholder entered into an agreement with Edward Levy whereby the stockholder received an option to purchase this stock. The stockholder actually purchased the stock from Levy on December 18, 1933, for the sum of $5,000.

In its return, on the accrual basis, petitioner deducted $18,863.35, representing a 2 percent amortization of the cost of the leasehold apparently spread over the expected period of the mortgage. In this cost, petitioner included the $900,000, principal of the mortgage, and the $43,167.61 expended in connection with the assignment. In its petition it contends that $5,000, representing the value of the stock issued to Edward Levy in connection with the assignment, should also be included.

In its return for the fiscal year ended February 28, 1934, petitioner claimed a deduction of $18,863.35 for amortization of its leasehold costs. This sum constituted two percent of $943.167.61, which is the aggregate of $900,000, the principal amount of the consolidated mortgage, and $43,167.61, which it paid on account of past due taxes and other expenses in connection with the assignment of the lease to it. The respondent disallowed the deduction except as to the item of $43,167.61, which he determined was properly amortizable over the term of the original lease. This determination, as to the proper period over which this conceded item of cost of the lease is to be amortized, is correct. *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381; *1620 Broadway Corporation*, 36 B. T. A. 149.

The issue remaining is whether the cost of this leasehold to petitioner includes also any part of the consolidated mortgage and

$5,000, as the value of two and one-half shares of petitioner's stock issued to a nominee of the assignor in connection with the assignment of the lease to petitioner. The position of petitioner is that (1) it assumed the entire mortgage obligation of $900,000 at the time it acquired the lease and is therefore entitled to include this entire item in its cost; and (2) even if the fact of that assumption be ignored, the mortgage existing on the leasehold represents a cost thereof to petitioner.

It would seem clear that only such part of this mortgage as may be considered invested by the petitioner in the leasehold can be considered as includable in its cost for amortization purposes. *Duffy* v. *Central Railroad of New Jersey*, 268 U. S. 55. It may well be that the personal assumption of the mortgage by petitioner, even though payments thereon were postponed until a year after the tax year, would suffice for that purpose. See *Brons Hotels, Inc.*, 34 B. T. A. 376; *John D. Fackler*, 39 B. T. A. 395. But, without petitioner's assumption of that personal liability, at least, payments, neither due nor made during the tax year, do not constitute an investment in or cost of the lease to petitioner. That is the converse of our decisions holding that one who owns real estate subject to a mortgage, the payment of which the owner did not personally assume, receives nothing upon a foreclosure sale of such real estate. *Commonwealth, Inc.*, 36 B. T. A. 850; *Sol Greisler*, 37 B. T. A. 542; affd., *sub nom Commissioner* v. *Freihofer*, 102 Fed. (2d) 787. This disposes of petitioner's second contention on this issue.

Assuming, but not deciding that such part of the consolidated mortgage here, the payment of which was personally assumed by the petitioner, was includable in its amortizable cost of the leasehold—was any part of this mortgage so assumed?

Petitioner acquired the lease from the lessor, through its assignor, the Fifty Seventh Avenue Corporation. Thus, as to the provisions of the lease, petitioner is in exactly the position of the prior lessee. *Cogar* v. *Commissioner*, 44 Fed. (2d) 554. But petitioner was neither a party to nor has assumed the payment of the mortgage as such. It is personally liable only so far as the lease provides. Its only obligation in that connection under the lease was to "pay the interest and installments of principal upon any and all mortgages now or hereafter a lien upon the demised premises not exceeding in the aggregate the principal sum of $900,000, or such lesser amount as shall remain due and unpaid from time to time on the mortgage and mortgages and/or consolidated mortgage referred to in paragraph fifteenth hereof."

Paragraph "Fifteenth" provided that the consolidated mortgage "shall be amortized by the Lessee at the rate of not less than Eighteen

Thousand Dollars ($18,000) per annum payable in two semi-annual installments." And the modification of the lease, effected before the assignment to petitioner, postponed any payments on the mortgage until March 13, 1937. Under such circumstances, we think that petitioner's only personal liability was that of a lessee and not as a borrower. See *379 Madison Ave., Inc.*, 23 B. T. A. 29; reversed on other grounds, 60 Fed. (2d) 68. And as such, during the taxable year, it had no personal liability to make any payment on account of the mortgage. It follows, we think, that no part of the consolidated mortgage on the leasehold forms a part of the cost of the leasehold to petitioner. Respondent was right in denying petitioner any amortization deduction on account of it, for the taxable year.

Petitioner raises, for the first time in its petition, the question as to whether or not the value of two and one-half shares of its stock, issued to a nominee of the assignor of the lease, should be included in petitioner's cost of the leasehold. Aside from any other frailties in this position, the agreement under which this stock was issued is not in evidence nor is anything disclosed as to why it was issued. We hold that this item is not a part of petitioner's cost of the leasehold for amortization purposes.

*Decision will be entered for the respondent.*