## I. G. ZUMWALT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6883. Promulgated February 23, 1932.

*O. R. Folsom-Jones*, Esq., and *F. E. Youngman*, Esq., for the petitioner.

*H. A. Cox*, Esq., for the respondent.

## OPINION.

Van Fossan: The petitioner contends that the total cost of the irrigation system described in the findings of fact should be allowed as a deduction from income for the year 1919, on the ground that such cost was a usual and necessary expense of business in that year. In the alternate, he contends that he abandoned the main canal and pumping plant in 1919 and that, therefore, he should be allowed to deduct their cost as a loss incurred during the year, and in addition thereto should be permitted to deduct the cost of the distribution ditches and booster plants from his 1919 income as a usual and necessary expense of business.

In our opinion the evidence does not support these contentions. The evidence shows that in the early part of 1919 the petitioner entered upon a large project of rice cultivation. Rice-growing in the

part of California in which the petitioner's land was situated was in an experimental state. It appears from the proof that an adequate supply of water to cover the rice at the various stages of its growth was an essential factor in its successful cultivation and that a lack of a sufficient supply of water was fatal to the crop.

The petitioner had added to his own land a large acreage which had been leased to him for rice-growing purposes. Leases by which he acquired the additional acreage ran for an average period of three years, namely, on the average, for the crop years 1919, 1920 and 1921. The annual rent reserved in the leases amounted to a substantial sum of money. The leases granted to petitioner the right to grow rice and to irrigate the land leased to him. The petitioner had leased to tenants, for rice cultivation, parts of his own land, and for the same purpose had subleased to tenants parts of the land leased to him. These leases and subleases to petitioner's tenants obligated him to furnish them an adequate supply of water for the cultivation of a rice crop. One of these leases to the petitioner's tenants ran for a term of two years. The petitioner had cultivated rice on a part of his land prior to 1919 and for such cultivation had used waste water draining through the so-called trough described in the findings of fact. But the evidence discloses that he had no knowledge as to whether or not in 1919 and subsequent years there would be sufficient waste water draining through the trough or sufficient water coming from the mountains to the west of his acreage to furnish an adequate supply either for his own use or for the use of his tenants. He admitted during his cross-examination at the hearing that he could not compel rice growers to the north of his property to allow waste water from their operations to flow through the trough.

From these facts we must conclude that the petitioner constructed his irrigation system, consisting of a main canal, pumping plant, distribution ditches and booster plants, for the purpose of assuring at all necessary times an adequate supply of water for rice cultivation on his own land, on the land leased to him, and on the land leased by him to tenants. Obviously, such expenditures are capital expenditures. It is true that the petitioner testified that when he built the irrigation system he intended to use it only for a year, namely, for the year 1919. But in answer to further interrogation he stated in substance that at the time of construction he did not know how long he should use the irrigation system. And although he stated that the first year of cultivation was the "big year and the big money," he admitted that he cultivated his own and his leased lands in 1919, 1920, and 1921, stating in respect thereto as follows:

I had these leases tied up and had paid cash for the land and had to pay rent anyway and I got something off it to pay the cash rent * * *.

The facts show clearly that the cost of the construction of the main canal, pumping plant, distribution ditches and booster plants was a capital expense and not an ordinary and necessary expense of business for the year 1919.

Nor are we impressed with the contention that the petitioner abandoned the main canal and pumping plant in 1919 and that the total cost should be allowed as a loss. The testimony indicates, and we have found as a fact, that petitioner did not use them for more than ten days in 1919. That year there was a sufficient flow of waste water through the trough and of water from the mountains to the west to furnish an adequate supply of water both for the petitioner's own land and also for his leased lands. It appears also that the operation of pumping water from the Sacramento River to the canal was an expensive one and was not justified if sufficient water for the cultivation of the rice crop could be secured otherwise. For these reasons petitioner had little need to use the main canal and pumping plant during the crop year of 1919. But mere nonuser does not constitute abandonment. In *Belridge Oil Co.*, 11 B. T. A. 127, we said: "Whether or not there has been an abandonment * * * depends on the intention of the owner, coupled with the act of abandonment, both to be ascertained and determined from all the surrounding facts and circumstances." See also *Marquart* v. *Bradford*, 43 Cal. 526. Although the petitioner did not use the main canal for more than ten days in 1919, he used it in 1920 when he leased it to the Williams Irrigation District, as stated in the findings of fact. He used it again in 1923 and 1925 for the irrigation of his land and at all times it was ready for his use in the event of a failure of waste water in the trough. The evidence does not sustain the petitioner's contention that he abandoned the main canal and pumping station in 1919. It follows that he is not entitled to deduct the total cost as a loss incurred during that year.

It is our opinion also that the evidence fails to support a contention that the useful life of the main canal and pumping station was limited to the life of the several leases made to the petitioner. The main canal, which was constructed on a right-of-way owned by petitioner, ran from the Sacramento River about six miles to a point in the petitioner's own land. This land consisted of a large acreage suitable for rice-growing purposes. The pumping plant and canal could and did furnish the petitioner with water for rice-growing on his own land for several years after the leases referred to had expired, and we are satisfied from the evidence that they were constructed for the purpose of creating a permanent source of water supply for rice cultivation on the petitioner's land at any time when the conditions were suitable for such cultivation. Assuming that the main canal and pumping plant were both subject to depreciation, there

is nothing in the record from which we can determine the amount of depreciation of the main canal in 1919 or from which we can say that the rate of 10 per cent a year for depreciation of the pumping plant which was allowed by the respondent is insufficient.

The construction of the distribution ditches and booster plants, however, was made necessary by the terms of the agreements entered into by the petitioner with his lessors and lessees. After the expiration of the leases running to him the petitioner had no right to use this secondary irrigation system constructed on land leased by him. Under the terms of several of the leases the petitioner had obligated himself to fill in the ditches upon the expiration of the term granted thereby. In every case, upon the expiration of the lease, the ownership of the ditches located on leased land would pass to the owner of that land. Therefore, at the expiration of the leases the useful life of the secondary irrigation system would terminate and the booster plants would be worth only their salvage value. It does appear, however, that a part of the distribution ditches served, or could serve, a relatively small acreage of land owned by the petitioner and usable for rice cultivation, but this portion of the ditches was necessary to connect the main canal with the distribution ditches serving the large acreage leased to the petitioner and was an essential link in the distribution ditches required by the petitioner's agreements with his lessors and lessees. It is our opinion, therefore, that the useful life of the distribution ditches was commensurate with the life of the leases to the petitioner.

We have held in numerous cases that a lessee who places on leased property improvements which can not be removed after the expiration of the lease is entitled to amortize the cost of such improvements over the life of the lease. *National City Bank of Seattle*, 1 B. T. A. 139; *Rosenfield Dry Goods Co.*, 4 B. T. A. 373; *Terre Haute House Co.*, 17 B. T. A. 384; *Lowe & Campbell Athletic Goods Co.*, 18 B. T. A. 1134. This principle is applicable to the present proceeding in respect to the cost of the distribution ditches and booster plants. The money expended in their construction was expended for the entire term covered by the leases running to the petitioner and was not a necessary expense of business in the year 1919. The cost of the ditches and booster plants should, therefore, be recovered by the petitioner over the term granted by the leases. While the life of the several leases varied in duration, a fair average life was three crop years, beginning with the crop year of 1919. In our opinion, therefore, it is reasonable and equitable for the petitioner to amortize the cost of the distribution ditches and booster plants over the years 1919, 1920 and 1921, one-third of such cost being deductible from income in each year. It appears that the cost of the distribu-

tion ditches and booster plants was $89,028.46 and that the cost of the booster plants alone was $6,660.59. Of this latter sum one-tenth, or $666, has been allowed by the respondent as a deduction from income for the year 1919. The salvage value of the booster plants was $2,500 and the distribution ditches had no salvage value.

The deficiency for the year 1919 will be redetermined in accordance with this opinion.

*Judgment will be entered under Rule 50.*