## CHARLES C. LEWIS CO. v. UNITED STATES.
### No. 4975.

District Court, D. Massachusetts.
April 6, 1936.

John H. Mitchell, of Springfield, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to U. S. Atty., both of Boston, Mass., and Frank J. Wideman, Asst. Atty. Gen., and Andrew D. Sharpe and Frederick W. Dewart, Sp. Assts. to the Atty. Gen., for the United States.

McLELLAN, District Judge.

This action was brought to recover taxes alleged to have been illegally assessed and collected for the year 1920. In 1921 the plaintiff paid income and profits taxes, as shown on its return for the year 1920, in

the amount of $35,141.83. On October 14, 1925, within five years from the date when the return was filed, the Commissioner mailed to the plaintiff a notice of his determination of a deficiency in the plaintiff's income and profits taxes for the year 1920. The plaintiff then appealed to the Board of Tax Appeals, under the provisions of the Revenue Act of 1924, § 900 et seq. (43 Stat. 336). The Board of Tax Appeals eventually found that a deficiency existed, although in a slightly different amount from that originally found by the Commissioner, and in 1930, additional taxes in the sum of $3,055.05 were collected. Prior to this time, the plaintiff had filed two claims for refund with the Commissioner. One of these was filed in 1923, and formally rejected April 10, 1925. The other was filed December 31, 1925, and was formally rejected by the Commissioner on June 25, 1928, before the Board of Tax Appeals had rendered its decision on the plaintiff's appeal. After the additional taxes had been paid, the plaintiff filed a third claim for refund, which was rejected May 22, 1931. The plaintiff then brought this suit by petition in the District Court, as he was allowed to do by statute, having appealed to the Board of Tax Appeals well before the passage of the Revenue Act of 1926 (44 Stat. 9).

 The plaintiff now urges that its tax liability for the year 1920 has been erroneously computed in four respects, resulting in an overpayment of $11,994.86. Its first complaint is that no allowance was made in the computation of invested capital for an item of good will. The findings of the Board of Tax Appeals applicable to this question are here prima facie evidence of the facts there found. Section 900(g), Revenue Act of 1924. They have not been disputed and are now to be deemed conclusive.

In 1886, one Charles C. Lewis organized a corporation under the laws of Connecticut, which engaged in the business of jobbing heavy hardware and steel products. It continued in this business until September, 1915, during which time it built up a business covering northern Connecticut, western Massachusetts, New Hampshire, and Vermont. The average net value of the tangible assets of the Connecticut corporation for the five years 1910–1914 was $139,065.62. During the same period its average earnings were $20,801.84. In 1915, the founder of the business died, and

a new corporation, the present plaintiff, was organized under the laws of Massachusetts and took over the business of the Connecticut corporation. At that time the stockholders of the Connecticut corporation voted: "That the corporation sell and transfer all the property, rights, and assets of whatever description, owned or possessed by this company at the time of the transfer, including the goodwill of the business carried on by it, to such person, firm or corporation, including any corporation that may be hereafter organized under the laws of Massachusetts for the purpose of taking over the assets of this corporation, and at such price and upon such terms and conditions and at such time as the President may deem expedient. * * *"

Subsequently, the plaintiff's directors passed three votes relating to the purchase of the assets of the Connecticut corporation and the issue of shares by the plaintiff. The first vote was that the corporation acquire of one Charles A. Bemis, an intermediary, "all the stock in trade, fixtures and other property owned by The Charles C. Lewis Company, a Connecticut corporation, and transferred by said corporation to said Bemis; and that, in consideration therefor, this corporation issue to said Charles A. Bemis two hundred and fifty (250) shares of the preferred stock and four hundred and ninety-eight (498) shares of the common stock of the corporation, said property to be received in full payment for said shares." The second vote was "that the corporation acquire of The Charles C. Lewis Company, a Connecticut corporation, all its bonds, stock and other securities, notes, accounts and bills receivable, cash on hand or in bank, goodwill of the business formerly carried on by the said Connecticut corporation, and all other rights, actions, causes of action and property whatsoever owned and possessed by the said Connecticut corporation, excepting the property conveyed by it to Charles A. Bemis; and, in consideration therefor, that this corporation assume and agree to pay all notes and accounts payable and all other liabilities of the Connecticut corporation other than capital stock liability. * * *" The third vote authorized the issue of two shares of the common stock of the corporation for cash. The property acquired by the plaintiff was set up on its books at the same value at which it had been carried on the books of the old corporation.

The plaintiff argues that in fact the good will of the old corporation was acquired at the time the new was formed, and that this value substantially increased the paid-in surplus of the new corporation at that time. Allowing an 8 per cent. return on the tangible assets of the old corporation, the plaintiff arrives at a figure of $9,676.59 as that proportion of the average net earnings per year of the old corporation attributable solely to good will. Capitalizing this at a rate of 15 per cent. results in $64,510.60 as the fair value of the good will acquired. This is considerably in excess of 25 per cent. of $75,000, the total capital stock, which is the limit imposed on the inclusion of good will for the purpose of taxation by section 326(a)(4) of the Revenue Act of 1918 (40 Stat. 1092). The plaintiff therefore contends that it is entitled to have 25 per cent. of $75,000 or $18,750 included in its computation of invested capital.

Unquestionably, good will of value passed to the newly formed corporation, increasing proportionately the worth of its shares. But the question here involved is whether this amount may be considered a part of invested capital, for the purposes of the Revenue Act of 1918, which in section 326(a) thereof, defines "invested capital" as "(1) Actual cash bona fide paid in for stock or shares; (2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor. * * * (3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year; (4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest." This statute means that good will can be included as a part of "invested capital" only when shares or stock are specifically issued in payment therefor; otherwise the limitation in section 326(a)(4) to the effect that the amount allowed shall not exceed "the par value of the stock or shares issued therefor" would be meaningless, and a difference would be introduced between the treatment of intangible property and the treatment of tangible property under section 326 (a)(2), for which no warrant is to be found in the statute. Landesman-Hirschheimer Company v. Commissioner of Internal Revenue (C.C.A.) 44 F.(2d) 521; Henry Prentiss & Company v. United States (C.C.A.) 57 F.(2d) 676, 678; B. F. Sturtevant Company v. Commissioner of Internal Revenue (C.C.A.) 75 F.(2d) 316. In Henry Prentiss & Company v. United States, supra, it is said: "It is apparent that to include good will as invested capital the stock of the company must be specifically issued for the intangibles. It is not enough to issue it for the property generally which was taken over. Good will is an incident to the business of any going concern and may follow it and not be paid in for the stock of the acquiring company."

In the present case, the votes passed by the plaintiff's board of directors disclose that no stock was specifically issued for good will. On the contrary, the stock was issued for the tangible property which had been conveyed to the intermediary Bemis, and the other assets taken over, including the good will, were to be paid for by the promise of the new corporation to assume the debts of the old. I conclude that the plaintiff is not entitled, under section 326 of the Revenue Act of 1918, to have any amount representing good will included in the computation of its invested capital.

The plaintiff's second contention is that the amount of its gross income, as computed by the Commissioner, has been erroneously increased by the inclusion therein of a considerable sum, representing accounts receivable at their face value. The plaintiff says that accounts receivable are to be regarded as an item of inventory; that the regulations provide that items of inventory are to be carried at cost or market, whichever is lower; and that the cost of its own accounts receivable is to be measured by the cost of the goods, the sale of which gave rise to those accounts. The plaintiff kept its books and made its returns on an accrual basis. The plaintiff's argument purports to be based on an opinion of the Circuit Court of Appeals for this circuit in Russell v. Commissioner of Internal Revenue, 45 F.(2d) 100, in which the word "inventory" is used to include the assets of a corporation, and is not used in its strict

accounting sense. There is nothing in that case to indicate that the court thought that accounts receivable, in returns made out on an accrual basis, should be valued in the same way as merchandise held for sale. Nor is there anything in the opinion to indicate that the court thought that no account receivable should ever be carried at a value higher than the cost of the goods whose sale gave rise to the account. The question here involved is settled by Spring City Foundry Company v. Commissioner of Internal Revenue, 292 U.S. 182, 54 S.Ct. 644, 645, 78 L.Ed. 1200, where the Supreme Court held that when accounts are kept on an accrual basis, accounts receivable must be returned at their face value. The court said: "Petitioner first contends that the debt, to the extent that it was ascertained in 1920 to be worthless was not returnable as gross income in that year, that is, apart from any question of deductions, it was not to be regarded as taxable income at all. We see no merit in this contention. Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues." The court then said that when accounts receivable become uncollectible, in whole or in part, the question is what deduction may be taken under the applicable statute, and that under the 1918 statute no deductions are permitted except for debts ascertained to be worthless. The plaintiff's contention as to the accounts receivable is not sustained.

◼ The plaintiff's third complaint is that it has not been allowed to take sufficient depreciation for a loading platform built in 1919 and 1920 on property on Lyman street, in the city of Springfield, Mass., which was held on a lease from the New York Central Railroad, as lessee of the Boston & Albany Railroad. The plaintiff went into possession of these premises under a lease dated January 27, 1909. This lease was for a period of one year, and thereafter until terminated on any day by written notice of sixty days by either party. This lease provided that the lessee should at the end of the term "Peaceably deliver up to the lessor said premises, together with all future erections or additions upon or to the same. * * *"

A new lease, also for a year, and thereafter until terminated by sixty days' notice, was signed June 1, 1920. The plaintiff says that the platform was completed before the new lease went into effect, and became part of the realty immediately, and should therefore be depreciated entirely in the year 1920. The new lease, however, contained a provision: "It is also mutually agreed that any structure which have been, or may be erected by the lessee upon the demised premises are to be and remain the property of said lessee until the termination of this lease." It is apparent, therefore, that whatever the status of the platform in question may have been prior to June 1, 1920, it became thereafter the property of the plaintiff, who was then entitled to remove it at any time before the termination of the lease, which could only occur upon sixty days' notice. Under these conditions, the evidence is not such as to permit the plaintiff to prevail as to this claim.

◼ The plaintiff's final contention is that the cost of a building built on land held under a three-year lease should have been depreciated over the term of the lease. Where capital expenditures are made to improve property subject to a lease which is shorter in point of time than the fair life of the improvement, the taxpayer should be allowed to depreciate the improvement over the term of the lease. Duffy v. Central Railroad Company of New Jersey, 268 U.S. 55, 45 S.Ct. 429, 69 L.Ed. 846; I. G. Zumwalt v. Commissioner of Internal Revenue, 25 B.T.A. 566. The defendant urges that the plaintiff has not proved that there was a building or that there is sufficient evidence to show what such a building cost. On all the evidence, I find a building was erected on property held under a three-year lease, and at a cost of $8,167.87. At the hearing, counsel for both parties were of the opinion that they would be able to agree on the amount of depreciation already allowed on the building by the Commissioner. The conclusion is that the plaintiff should recover such tax as resulted from the failure to depreciate the building on leased land over a three-year period. As this amount will not exceed the amount of taxes paid in 1930, the plaintiff's claim filed December 10, 1930, and rejected May 22, 1931, is a sufficient basis for recovery (Revenue Act 1926, § 284(b)(1) and (2), 44 Stat. 66), and it is unnecessary to con-

sider whether the plaintiff otherwise would be entitled to maintain the action under its claim of December 31, 1925.

Judgment is to be entered for the plaintiff in such sum as upon the basis of the foregoing conclusions may be agreed upon by the parties, and should they be unable to agree, then in such sum as after hearing may be determined by the court.