### BIRD & SON, Inc., v. WHITE, Collector of Internal Revenue.

### No. 4596.

District Court, D. Massachusetts.
Aug. 3, 1936.

Pierpont L. Stackpole, John G. Palfrey, Gladwin M. Nead, and Warner, Stackpole & Bradlee, all of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to the U. S. Atty., both of Boston, Mass., Robert H. Jackson, Asst. Atty. Gen., and Andrew D. Sharpe and Frederick W. Dewart, Sp. Assts. to the Atty. Gen., for defendant.

BREWSTER, District Judge.

This is an action to recover income and excess profits taxes, paid by the plaintiff for the years 1918, 1919, and 1920. The case was heard without jury, upon stipulated facts, from which it appears that the plaintiff was incorporated under the laws of Massachusetts, on May 10, 1918, as the Paper Box Company, with an authorized capital stock of $6,000,000 divided into 20,000 shares of preferred; 30,000 shares of second preferred, and 10,000 shares of common, all of the par value of $100 each; that each of three incorporators subscribed for 2,500 shares of preferred and 2,500 shares of common stock, for which they paid, in cash, $1,500,000. The corporation then acquired from Bird & Son, a partnership, its good will, for which it paid $1,500,000 in cash. Upon receiving an assignment of the good will, the corporation voted to change its name from the Paper Box Company to Bird & Son, Inc. Three days later the corporation voted to acquire of the partnership all the property and assets of the firm, with certain exceptions not material, for which it agreed to pay $4,591,026.06, with an agreement to assume and pay the partnership liabilities. The sum was to be paid by unsecured demand notes of the corporation for $91,026.06, the balance to be paid by the issuance of capital stock as follows:

First Preferred.................. 2,000,000
Second Preferred.............. 2,250,000
Common ..................... 250,000

The offer of the partnership to sell its good will to the new corporation and the offer to sell the other assets of the partnership were made and accepted as separate and distinct propositions, and yet both were a part of the same plan to incorporate, under the laws of Massachusetts, the business theretofore carried on as copartners, under the name of Bird & Son.

The original subscribers to the agreement of association were requested to form the corporation and to subscribe for the stock, with the assurance from Mr. Bird, who was the principal owner of the partnership, that he would purchase the stock for which the incorporators subscribed and pay for the same in cash. This he did, and the proceeds were applied to repay the $1,500,000 which the incorporators had borrowed individually.

The plan was very carefully and elaborately worked out so that it could be maintained before the tax authorities, or in court, that the good will had been acquired and paid for in cash which, under the laws in force in May, 1918 (Revenue Act 1917, §§ 207, 208, 40 Stat. 306), would have entitled the corporation to include the sum of $1,500,000 in its invested capital. There is no suggestion from any source that the acts of the party in thus proceeding were open to criticism, and every step was taken openly and has been fully disclosed to the authorities.

It happened, however, that in the Revenue Act of 1918 the law was amended by the enactment of section 331 (40 Stat. 1095), which provided that: "In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: Provided, That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation."

 It has been held in this circuit that this section applies when intangibles are acquired, even though paid for by cash, or its equivalent. Conrad & Company v. Commissioner (C.C.A.) 50 F.(2d) 576.

While the plaintiff is not willing to concede the correctness of this decision, of

course, it is binding upon this court until it has been overruled.

We are therefore brought to the question whether it is possible to ascertain the cost of the good will at the time of its acquisition by the partnership. Bearing on this issue, the stipulated facts are that for many years prior to January 1, 1913, the entire business which was then conducted under the name of F. W. Bird & Son was owned and operated by the late Charles S. Bird, Sr., who was the sole owner of the business and all the real estate and other property used in it. On January 1, 1913, Bird took into partnership his son Charles S. Bird, Jr., and one Philip R. Allen, forming a partnership under the name of Bird & Son. The partners took a lease of the real estate and certain personal property used in connection with the business, paying as rental a certain percentage on the book value. The partnership also acquired the intangible assets, raw materials, stock in process, and manufactured products pertaining to the business, assuming the liabilities as shown on the books.

The profits and losses were to be shared 85 per cent. by Charles S. Bird; 7½ per cent. by Philip R. Allen; and 7½ per cent. by Charles S. Bird, Jr. No reference was made to good will, except that the partnership agreement provided that, upon the termination of the partnership, the good will would belong exclusively to Mr. Bird or his estate.

On January 1, 1917, Charles S. Bird, Jr., withdrew as a partner, and a new partnership agreement was made between Charles S. Bird, Sr., and Allen to carry on the same business under the name of Bird & Son. This new partnership agreement also provided that the real estate and machinery, used in connection with the business, should be leased during the life of the partnership; the rental being 5 per cent. of the book value of the leased property. The profits and losses were to be shared, 85 per cent. to Bird and 15 per cent. to Allen.

The profits and losses for the previous calendar year were to be ascertained and credited or debited, on the books of the partnership, to the capital account of the respective partners on or before the 1st day of April in each subsequent year, and each partner agreed to leave in the business not less than 66 per cent. of his share of the profits of each year, which were to be credited to his capital account, with the right to withdraw the balance of his share of the yearly profits.

The capital account of Bird was to be in the sum of $936,832.34 as of the date of the agreement, and the capital account of Allen was to be the sum of $26,079.65 as of the same date.

The only mention of any good will in this agreement was found in the sixth and seventh paragraphs of the agreement, which provided that upon the termination, as therein provided, the good will, stock in trade, and other assets should vest in Bird in his own right, subject to the right of Allen to be paid whatever balance stood to his credit at the time of such termination. If the partnership were terminated by the death of Bird, the good will, stock in trade, and other assets were to vest in his estate, subject to the same right in Allen to be paid out his share.

On the 24th day of November, 1917, the copartners executed a writing, as follows: "Charles S. Bird and Philip R. Allen, as a supplement to their partnership agreement, dated January 1, 1917, hereby mutually agree that all real estate, machinery, patents, and trade marks used or enjoyed by the partnership of Bird & Son, and the good will of the business, are and shall be property and assets of the partnership, and shall be entered forthwith as partnership assets on the books of the partnership; that as soon as the appraisals now being made have been sufficiently completed to enable the partners to agree upon a satisfactory valuation of said property and good will, an amount equal to such valuation shall be credited to Mr. Bird's capital account; and that then the interest to be received by the partners on their respective capital accounts shall be readjusted and determined as may be mutually agreed upon."

No deed of the real estate or other instrument of conveyance was executed from Bird to the partnership, and, so far as the records disclose, nothing was done by the partnership toward setting up on the books of the partnership any apportionment of the capital account or any entries to show what contribution was made by each of the partners. It has appeared that, in the division of the capital stock which the partners received for the assets, Mr. Bird received 90 per cent. of the shares and all of the cash received for good will.

■ The government argues that the assignment of the good will, by separate instru-

ment three days before the plaintiff acquired the business and assets connected with it, is invalid because the law does not recognize an assignment of good will of the business separate and apart from the business with which it is identified. I do not see any merit in this argument. The plaintiff did acquire the business and the assets employed in carrying it on, and, in my opinion, this would operate to pass to the plaintiff ownership of the good will. Pfleghar Hardware Specialty Co. v. Blair (C.C.A.) 30 F.(2d) 614, 617; Charles C. Lewis Co. v. United States (D.C.) 14 F. Supp. 471.

With the plaintiff's contention that $1,500,000 of actual cash was bona fide paid in for stock or shares within the meaning of section 326 (a) (1) of the Revenue Act of 1918, 40 Stat. 1092, I have no hesitation in agreeing, and, were it not for the decision of the Circuit Court of Appeals in Conrad & Co. v. Commissioner, supra, I should think it could properly be included as invested capital.

The partnership agreements of 1913 and 1917 did not expressly vest in the partnership the good will of the business. Obviously, the partners had the benefit of it, and perhaps, by implication, it could be said to follow the business from Bird to the partnership, but there is nothing in the record which would enable the court to determine what the partnership paid for the good will, if indeed it paid anything.

It is the contention of the plaintiff that, where property is contributed to a partnership, and the value of the property contributed is set up in the partner's capital account, the partner has no right to the return of the property in kind, and what the partner receives for his contribution is the share, or interest, in the partnership represented by the right to have the amount of the contribution paid to him upon liquidation, or termination, of the partnership. It is contended that this obligation to repay is what the partnership gives for the property contributed, and the cost of acquisition to the partnership is the amount of the credit or obligation. It is further contended that, where the property contributed is not set up in a capital account, but the partner is entitled on liquidation or termination of the partnership to a return of the property in kind, the obligation to return in kind is a capital obligation of the partnership which represents the cost of acquisition measured by the value of the property which the partnership is obligated to return.

Inasmuch as in the instant case there were no provisions for setting up the good will as a separate item, and the contributions of the partners were not, in fact, set up, although contemplated by the agreement of November 24, 1917, I am unable to see how, on any theory, it is possible for this court to determine what was the cost to the partnership of the good will of the business, or when, in fact, it was acquired. It was an intangible asset which had been acquired in the course of the conduct of the business over a long period of years. It was stipulated that it had a value, at the time it was acquired by the corporation, of $1,500,000. I am unable to discern in the record any justification for finding, as a fact, that the cost of the good will to the partnership was the amount which the corporation paid for it.

It is argued for the government that the partnership would have been unable to have obtained the inclusion in invested capital of the cost of the good will on the facts shown in the case. In view of what I have said above, it is not necessary to determine whether this contention is tenable.

My conclusion is that in this case the plaintiff cannot prevail and judgment should be entered for the defendant.